UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELDA ALANIS, <br><br> Plaintiff, <br><br> v. <br><br> METRA, <br><br> Defendant. | No. 13 CV 5962 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Elda Alanis works in the Office of Business Diversity and Civil Rights at Metra, a division of the Regional Transportation Authority that operates commuter rail lines in the Chicago area. Two years after she started working at Metra, Alanis began to feel unwell, and her doctors diagnosed her with several medical conditions. In November 2011, Alanis asked for medical leave to treat her illness, but the company physician required that she seek psychological treatment instead. Alanis did not seek such treatment, and after a few weeks, she was disqualified from working until she obtained psychiatric clearance (which she ultimately did in April 2012).

When she returned to work in 2012, Alanis says she was denied a promotion that had been promised to her, and was paid less than other employees performing the same tasks. She began to have reactions to smells in the workplace—*i.e.*, to odors from perfumes, food items and scented cleaning supplies—and requested as

an accommodation a scent-free workspace. The request was granted, and Metra instructed the employees in Alanis's office not to use scented products while at work. But Alanis claims that several staff members, including her supervisor, continued to do so.

In September 2012, Alanis filed the first of three suits against Metra, alleging violations of the Americans with Disabilities Act and the Family and Medical Leave Act. That case was resolved in Metra's favor at summary judgment. The second and third suits—in which Alanis again brought claims under the ADA and FMLA, as well as under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act— were consolidated in the present action. Metra moved to dismiss Counts I, VI, and X of the current complaint on the ground that these claims are barred by *res judicata* (or, with respect to Count X, barred in part). Metra also moved to dismiss Count XI, a hostile-work-environment claim under the ADA, on the ground that this cause of action is not recognized in the Seventh Circuit. For the reasons discussed below, the motion is granted in part and denied in part.

I. **Legal Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not include specific facts, but it must provide the defendant with fair notice of what the claim is, and the grounds upon which it rests. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1098–99 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007)). The complaint must present enough factual matter, accepted as true, that the claim to relief "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

Affirmative defenses such as *res judicata* cannot, as a technical matter, be raised until a motion for judgment on the pleadings under Rule 12(c). *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 664 (7th Cir. 2007); *see also Carr v. Tillery*, 591 F.3d 909, 912–13 (7th Cir. 2010). However, when an affirmative defense is disclosed in the complaint (*i.e.*, the plaintiff has pleaded herself out of court on that issue), the defense may serve as a proper basis for a Rule 12(b)(6) motion. *See Muhammed v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008).

## II.   Facts

### A.   Alanis's Employment and Health Concerns

The Regional Transportation Authority operates commuter rail lines in Chicago and its surrounding suburbs. [29] ¶ 10.[1] Metra, a division of the RTA, hired Elda Alanis in 2007 as a "DBE Associate" in its Office of Business Diversity and

---

[1] Unless otherwise indicated, citations to the record are designated by the document number as reflected on the district court's docket in case number 13-cv-5962, enclosed in brackets; referenced page numbers are from the CM/ECF header placed at the top of filings. Citations to the record from case number 12-cv-7508 or 14-cv-9212 are preceded by "*Alanis I*" and "*Alanis III*," respectively.

3

Civil Rights, which manages Metra's DBE program in accordance with federal transportation regulations. *Id.* ¶¶ 2, 10–12. ("DBE" stands for disadvantaged business enterprise. *Id.* ¶ 11.) Alanis was in good health when she started her job at Metra, but by 2009 she was experiencing stomach pains and nausea, and was having trouble breathing, on a daily basis. *Id.* ¶ 13. When symptoms were present, Alanis felt like she was choking, and it was difficult for her to speak. *Id.* ¶¶ 13–14. She saw several doctors, who diagnosed her with a variety of conditions, including fibromyalgia and vocal-cord dysfunction. *Id.* ¶¶ 14–15. Alanis sought and obtained certification under the Family and Medical Leave Act to take time off to treat her illness, and by the end of 2011, she had missed a substantial amount of work. *See id.* ¶¶ 14, 17.

On November 2 of that year, Alanis was at the office when she began to experience choking sensations. *Id.* ¶ 20. She asked for FMLA leave but was instead sent to Metra's contracted physician, Dr. Steven Hartsock, for a fitness-for-duty examination. *Id.* ¶21. Dr. Hartsock concluded that Alanis's problems were psychological, and required that she seek counseling by December 2, 2011. *Id.* ¶ 22. On November 17, Alanis again began to feel ill at the office and she was again sent to Dr. Hartsock, who reached the same conclusion he had previously: the cause of Alanis's symptoms was psychological. *Id.* ¶ 24. He disqualified Alanis from working even though, ten days earlier, one of her own doctors had confirmed to Metra that Alanis was suffering from respiratory and gastrointestinal problems. *See id.* ¶¶ 23, 25.

On January 6, 2012, while Alanis was on involuntary leave, she delivered to Metra a note from one of her personal physicians, which explained that Alanis had, among other illnesses, asthma and fibromyalgia—not a psychological condition—and that she was able to return to work immediately. *Id.* ¶ 26. The note requested several accommodations, including flexible work hours, periodic rest breaks, and a fragrance-free workplace. *Id.* Alanis delivered a similar note (from a different treating physician) two days later, but neither note persuaded Metra to let Alanis come back to work. Metra continued to insist that she first obtain a psychological exam, which she ultimately did on April 3, 2012. *See id.* ¶¶ 27–29. Following another fitness-for-duty exam on April 27, Alanis was allowed to return to the office on April 30, 2012. *Id.* ¶ 29.

After her return, things continued to go poorly for Alanis. She learned that a promotion promised to her before her medical disqualification had instead been given to two of Alanis's co-workers, forcing Alanis to return to her original position (and thus to forego a pay raise). *See id.* ¶¶ 43, 67–68, 77–78, 86–87. She spoke with members of Metra's Reasonable Accommodations Committee about the possibility of getting a personal office (to decrease her exposure to odors and fragrances, which she claims triggered coughing, sneezing, and other symptoms of her medical conditions), but was told that none was available. *See id.* ¶¶ 84–85. A private office did open up a few months later, but it was given to another employee. *Id.* ¶ 86.

Alanis also spoke with the committee about creating a scent-free workspace, which Metra agreed to do after it received from her doctors confirmation that this

accommodation would positively impact Alanis's health. *See id.* ¶¶ 84–85. In July 2012, Metra instructed employees in Alanis's office not to use hair spray, air freshener, perfume, cologne, or other scented products in the workspace or restrooms. *Id.* ¶ 85. As it turned out, however, food-related smells were also a problem for Alanis, and in March 2013 Metra moved her to a cubicle that was farther away from the office microwave and refrigerator. *Id.* ¶ 88. But the new cubicle was near the conference room and office sign-in sheet. *Id.* Despite a memo from Metra reiterating to office employees that scented products could not be used in the workspace, several of her co-workers continued to use scented cleaning supplies in the conference room, and others continued to use perfumes or colognes—which aggravated Alanis's symptoms when the employees walked by. *Id.* ¶¶ 89, 91.

Alanis's supervisor, Janice Thomas, was among those who continued to wear perfume at the office. *See id.* ¶¶ 92–93. In August 2014, after Alanis complained to another superior about the fragrances in the workplace, Thomas applied heavy perfume and threatened to formally discipline Alanis for wearing unprofessional-looking shoes at work. *Id.* ¶ 95. (Alanis had been wearing the same shoes for months, without comment. *Id.*) Thomas also permitted employees to eat their lunches in the conference room next to Alanis's desk. *Id.* ¶ 96. Lunches were delivered to the conference room for monthly staff meetings, and homemade foods were brought in for holiday celebrations—gatherings that, because of the smells, Alanis could not attend. *Id.* ¶¶ 97–98.

Alanis also claims that she faced inequities in salary. Though Alanis was eventually promoted to Compliance Specialist in May 2013, and given a corresponding raise, she was still earning less than the two individuals who had been promoted to Specialist during her absence in 2012. *Id.* ¶ 102. And when Metra hired other Specialists in 2013 and 2014, they, too, were paid more than Alanis. *See id.* ¶¶ 104, 106–07.

### B. Alanis's Lawsuits

On November 28, 2011, Alanis filed a charge with the Equal Employment Opportunity Commission, complaining of harassment and discrimination by Metra because of her disability. *See* [35-1] at 8. She received from the EEOC a right-to-sue letter on June 22, 2012, *see id.* at 7, and on September 19, 2012, she filed a *pro se* complaint against Metra under the Americans with Disabilities Act and Family and Medical Leave Act, *see id.* at 2–6 (complaint in *Alanis v. Metra*, 12-cv-7508 ("Alanis I")).[2] *Alanis I* concerned Metra's conduct beginning in 2010, including: Metra's alleged failure to accommodate Alanis's disability with a flexible work schedule, the ability to work from home, or an office with temperature controls; the company's creation of a hostile work environment and interference with Alanis's FMLA rights by requiring her to submit to repeated fitness-for-duty examinations; and retaliation against Alanis for complaining about her treatment at work. *See id.*; March 31, 2014 Memorandum Opinion and Order, [35-2] at 60–65. Metra's motion for summary judgment was granted on March 31, 2014. *See* [35-2] at 60–65.

---

[2] *Alanis I* was initially before Judge Conlon, but was reassigned to Judge Coleman in June 2013.

7

Meanwhile (and before she filed *Alanis I*), Alanis filed on July 25, 2012 a second discrimination charge, this time with the Illinois Department of Human Rights.[3] The second administrative complaint, like the first, also alleged discriminatory conduct based on Alanis's physical disabilities, but added complaints of discrimination based on a perceived mental disability (somatization disorder) and ancestry (Alanis is Hispanic). *See* [1] at 7–44. The second charge focused on conduct that took place between January and July 2012. *See id*. While the investigation of this complaint was pending, Alanis filed on December 21, 2012 a third administrative complaint (again with the IDHR), which addressed allegedly discriminatory conduct from July 2012 until the date of filing. *See* [35-1] at 23.

In May 2013, Alanis was notified of her right to sue on the second charge, and she filed (*pro se*) a second lawsuit against Metra on August 21 of that year. *See* [1] at 1–6 (complaint in *Alanis v. Metra*, 13-cv-5962 ("Alanis II")). To her complaint in *Alanis II* she attached her second IDHR charge, and, relying on the allegations set forth in that charge, asserted claims under the ADA, FMLA, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act. *See id*.[4] Alanis filed a third suit against Metra in November 2014, this time based on her third administrative charge, and again brought claims under the ADA, FMLA, Section 1981, and Title VII. *See Alanis v.*

---

[3] The IDHR automatically cross-files eligible employment charges with the federal EEOC, and conducts investigations for the EEOC pursuant to agency agreement. *See* http://www.illinois.gov/dhr/FilingaCharge/Pages/Federal_Agencies_and_Courts.aspx (last visited February 8, 2016).

[4] *Alanis II* was originally assigned to Judge Kendall, but was reassigned to Judge Coleman in October 2013. In July 2014, the case was reassigned to me.

*Thomas et al.*, 14-cv-9212 ("*Alanis III*"), [1] at 1–6.[5] *Alanis II* and *Alanis III* were consolidated, and the latter was terminated for administrative purposes. *See* [25]. Alanis—now with the assistance of counsel—filed a second amended complaint in the consolidated action. [29]. Metra moves to dismiss from the amended complaint Counts I (interference with FMLA rights) and VI (discrimination on the basis of color, in violation of 42 U.S.C § 1981), and Count X in part (retaliation, also in violation of Section 1981), on the ground of *res judicata*. [31] ¶¶ 4–6. Metra also moves to dismiss Count XI, an ADA claim for hostile work environment, because the Seventh Circuit does not recognize such a cause of action. *Id.* ¶ 7.

### III. Analysis

#### A. *Res judicata*

Metra argues that Counts I and VI, and part of Count X, of the second amended complaint are barred by *res judicata*. *Res judicata* is a rule of public policy that protects the finality of judgments and thus prevents parties from re-litigating claims that have already been decided. *See Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) (citation omitted). Where *res judicata* is based on the preclusive effect of a federal-court judgment, as in this case, federal common law governs. *Adams v. City of Indianapolis*, 742 F.3d 720, 735 (7th Cir. 2014) (citing *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008)). A claim is precluded under federal law when there exists: (1) an identity of the parties (or their privies); (2) an identity of the cause of action; and (3) a final judgment on the merits in the first suit. *Id.* at 736

---

[5] *Alanis III* was first assigned to Judge Wood, but was later reassigned to Judge Alonso, and then to me.

9

(citing *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011)); *see also Palka*, 662 F.3d at 437 (citing *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 851 (7th Cir. 2009)). The parties agree that the first and third elements are satisfied here; their dispute turns on the second element.

There is an identity of the cause of action where two claims arise from the same transaction or set of operative facts—that is, both stem from the same, or nearly the same, factual allegations. *Bernstein v. Bankert*, 733 F.3d 190, 226–27 (7th Cir. 2012) (citing *Matrix IV*, 649 F.3d at 547); *Ross ex rel. Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 283 (7th Cir. 2007) (citation omitted). If there is an identity between two claims, they must be brought together in the same suit. *See Ross*, 486 F.3d at 283; *see also Bernstein*, 733 F.3d at 227; *Palka*, 662 F.3d at 437.

### 1. Count I

In Count I of the amended complaint, Alanis alleges that Metra interfered with her rights under the FMLA, 29 U.S.C. § 2601 *et seq.*, by requiring her in November 2011 to undergo psychiatric testing before she could return to work—a requirement that Metra continued to impose in January 2012 even though, on January 6 and 8, Alanis provided documentation from her personal physicians stating that her symptoms were physical (not psychological) and were under control. *See* [29] ¶¶ 32–35. The operative facts in this complaint involve mandatory psychiatric testing, and so did *Alanis I*. In that case, Alanis complained that Metra had violated her FMLA rights by forcing her to submit to repeated fitness-for-duty

10

examinations in the fall of 2011, and by demanding that she obtain psychiatric treatment before she could come back to work. *See Alanis I*, [83] at 11–13.

Alanis argues that the FMLA claim she asserted in *Alanis I* was limited to Metra's conduct in 2011, since that suit was based on her first EEOC charge, which she filed on November 28 of that year. The present suit, by contrast, addresses what Metra did beginning in January 2012—or so Alanis says. *See* [35] at 4–8. But the EEOC has no authority to enforce the FMLA (it is the Secretary of Labor who has this power, *see* 29 U.S.C. §§ 2611(10), 2617(b)), and the temporal boundaries of her first EEOC complaint thus have no bearing on what Alanis ultimately decided to allege in support of her initial FMLA claim. That claim was based, at least in part, on Metra's repeated insistence that Alanis seek psychiatric treatment before being allowed to return to work; and that mandate carried over from 2011 to 2012. The fitness-for-duty requirements of which Alanis complains—whether imposed in late 2011 or early 2012—were all part of the same cluster of events. Count I of the second amended complaint is barred by *res judicata*.

    2.    *Count VI*

Count VI of the amended complaint is a discrimination claim brought under 42 U.S.C. § 1981. In support of this claim, Alanis alleges that before she was medically disqualified from working in November 2011, she was told she would be promoted from DBE Associate to DBE Compliance Specialist. *See* [29] ¶ 77. When she returned from her involuntary leave, however, she discovered that two other individuals—both Caucasian—had been promoted instead. *See id.* ¶ 78. Alanis

11

claims that when she came back to the office, she was "demoted" to her original position, and was prevented from participating in "outreach events" (Alanis does not explain what these are) because of her color and Hispanic ancestry. *See id.* ¶¶ 78, 80–82. Metra argues that Count VI is barred because: (1) this claim depends on facts concerning Alanis's return to work in April 2012, and claims turning on such facts have already been litigated (as just discussed); and (2) Alanis in any event knew about these facts when she filed her first lawsuit, and so could have asserted Count VI in that action. *See* [32] at 5; [36] at 8. That Alanis knew about her "demotion" and inability to participate in outreach events by the time she filed *Alanis I* is, without more, insufficient to bar her current discrimination claim: to avoid the operation of *res judicata*, two claims must be joined in an earlier action only if both arise from the same transaction. *See Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993) (citing *LaSalle Nat'l Bank of Chi. v. Cnty. of DuPage*, 856 F.2d 925, 933–34 (7th Cir. 1988)); *Perkins v. Bd. of Trs. of Univ. of Ill.*, 116 F.3d 235, 236 (7th Cir. 1997).

Joinder was not required here. Whether Alanis was promoted or allowed to participate in outreach activities has nothing to with the fitness-for-duty or psychiatric-evaluation requirements discussed above. Metra could have imposed these requirements but, once they were met and Alanis had returned to work, still have promoted her or permitted her to participate in outreach events. Each of these occurrences is a distinct transaction, and claims based on them need not have been brought together.

There were other facts at issue in *Alanis I*, but a comparison to those yields the same result. In her first lawsuit Alanis claimed that Metra had failed to accommodate her disability by denying her request for a reduced and flexible work schedule, declining to let her work from home, and refusing to provide her an office with temperature controls. *See* [35-1] at 5; *see also* [35-2] at 62. These events, too, were separate and distinct from the refusal to promote Alanis or to allow her participation in outreach activities. Alanis did make a cursory reference to outreach activities in her Local Rule 56.1 Statement of Additional Facts in *Alanis I*, but that reference was to Metra's actions in the spring of 2011. *See Alanis I*, [84] at 27 ¶ 30. Count VI of the present complaint concerns Metra's decision to disallow participation in outreach events *after* Alanis came back to work in spring of 2012. There was also some discussion in *Alanis I* of promotion decisions. However, those decisions (*i.e.*, Metra's decisions to promote individuals other than Alanis) were also made in 2011. *See Alanis I*, [26] at 3–4, 13; *Alanis I*, [89] at 9, 11. The promotion decisions of which Alanis complains in the current suit took place in early 2012. *See* [7] ¶¶ 78, 86–87, 101. Joinder was therefore unnecessary. *Cf. Perkins*, 116 F.3d at 236–37 (explaining that a discriminatory exclusion in one year is, for purposes of *res judicata*, distinct from the same kind of discriminatory exclusion in a later year).

### 3. Count X

Alanis claims in Count X that Metra retaliated against her in violation of 42 U.S.C. § 1981. (Alanis also alleges in Count X a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, but Metra focuses its motion to dismiss only on

13

the claim arising under Section 1981.) Because she filed charges of discrimination with the EEOC and IDHR, says Alanis, Metra retaliated against her by paying other (non-Hispanic) employees more than they did her, and by giving a (non-Hispanic) co-worker the private office Alanis had wanted. *See* [29] ¶ 128. Metra argues that Alanis knew of this alleged retaliation as early as July 2012, and so should have included her Section 1981 claim in the complaint she filed a few months later. *See* [32] at 5–6; [36] at 8.

That Alanis knew of the factual basis for one suit when filing another is, as already explained, not enough to trigger *res judicata*. Moreover, the salary discrepancies of which Alanis now complains are unconnected to the facts at issue in *Alanis I*.[6] There was a retaliation claim in *Alanis I* (brought under the ADA), but that claim was based on Metra's decision to change Alanis's work schedule. *See* [35-2] at 63–64. The remaining claims focused on Metra's imposition of the fitness-for-duty and psychiatric-evaluation requirements, and the company's refusal to give Alanis an office with temperature controls. *See id.* at 62–65. It may be that the latter issue is in some way connected with Metra's refusal to provide Alanis with a private office in July 2012, but the factual overlap, if any, is at this stage unclear. On the current record, the retaliation in Count X stems from a different set of facts than did *Alanis I*.

---

[6] Indeed, some of the salary discrepancies described in the current complaint did not even arise until 2013 or 2014, *see* [29] ¶¶ 102–07, so Alanis could not have included those facts in her 2012 complaint.

14

Metra's motion to dismiss Counts I, VI, and X on the basis of *res judicata* is therefore granted in part and denied part. The motion is granted with respect to Count I, but denied with respect to Counts VI and X.

B. **Hostile Work Environment**

In her present suit, Alanis claims that Metra created a hostile work environment—and thus violated Alanis's rights under the ADA—by refusing to make Alanis's office a scent-free workspace, and by declining to give her a private office (which, she says, would have solved the odor issue). *See* [29] ¶¶ 130–33 (Count XI). Metra argues that this claim should be dismissed because this type of action is not recognized in the Seventh Circuit. *See* [32] at 6.

The Seventh Circuit has not yet decided whether hostile-work-environment claims are actionable under the ADA; the question is an open one. *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009) (citing *Mannie v. Potter*, 394 F.3d 977, 982 (7th Cir. 2005)). However, the court of appeals has observed that if such a claim did exist, it "would seem to arise under the [statute's] general prohibition against discrimination with respect to terms or conditions of employment." *Silk v. City of Chicago*, 194 F.3d 788, 803 (7th Cir. 1999) (quoting *Miranda v. Wis. Power & Light Co.*, 91 F.3d 1011, 1017 (7th Cir. 1996)). This statutory language closely resembles language appearing in Title VII, and the Seventh Circuit has assumed that, to the extent the ADA permits a cause of action for hostile work environment, the standard for proving such a claim would mirror that employed in Title VII cases. *See Mannie*, 394 F.3d at 982 (citing *Silk*, 194 F.3d

15

at 804; *Jeseritz v. Potter*, 282 F.3d 542, 547 (8th Cir. 2002)).[7] That the court of appeals has neither endorsed nor rejected a hostile-environment theory under the ADA is not a basis to dismiss Alanis's claim. The similarity in statutory language between the ADA and Title VII, along with the widely accepted notion that creating a hostile environment on account of a protected classification is a form of discrimination, together suggest that the claim does exist under the ADA.

But Alanis's complaint does not state a claim for hostile-environment discrimination. To state such a claim, the plaintiff must allege that her workplace was both subjectively and objectively hostile (that is, a reasonable person would find it hostile). *See Silk*, 194 F.3d at 804–05. A hostile workplace is a workplace permeated with insult, ridicule, or intimidation so severe or pervasive that it alters the conditions of the plaintiff's employment (*i.e.*, results in a tangible employment action, such as discharge, demotion, or an undesirable reassignment) or creates an abusive working environment. *See id.* In determining whether this standard has been met, the court considers all of the circumstances, including: the frequency of the discriminatory conduct; its severity—that is, whether it was physically threatening or humiliating, or merely an offensive utterance; and whether it

---

[7] Section 2000e-2(a)(1) of Title VII provides, "It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, *terms, conditions, or privileges of employment*, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Section 12112(a) of the ADA states, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, *and other terms, conditions, and privileges of employment*." 42 U.S.C. § 12112(a) (emphasis added).

unreasonably interfered with the employee's work performance. *See id.* at 804 (quoting *Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998)).

Alanis claims that her workplace was hostile because, despite Metra's instructions to the contrary, Alanis's supervisor (Thomas) allowed employees in her office to wear scented sprays, and to clean the conference room next to Alanis's cubicle with scented products. *See* [29] ¶¶ 85, 89–91. Only a few of Alanis's co-workers actually continued to wear perfumes or use scented sprays, but this was enough to affect Alanis, she says, as she could smell the fragrances (and so would start coughing) when the employees walked past her desk to use the sign-in sheet or get files stored nearby. *See id.* ¶ 91. Alanis asked that the files be relocated, but Thomas denied that request. *Id.* Thomas, too, continued to wear perfume to work several times each month, including at staff meetings attended by Alanis. *Id.* ¶ 93. Alanis asked Thomas not to use perfume in the office—or, alternatively, to shut her door when she did—but Thomas denied this request, as well. *See id.* ¶ 94. On some occasions (we do not know how many), Thomas intentionally applied the perfume in Alanis's presence. *See id.* ¶ 92. And only two days after Alanis complained to another superior about the lack of a scent-free workspace, Thomas—who had learned about the complaint from the other supervisor—applied heavy perfume and threatened to discipline Alanis for wearing "unprofessional" shoes (which, until then, had not been a problem). *See id.* ¶ 95.

Thomas also permitted employees to eat their lunches in the conference room (which the staff further used to hold lunchtime meetings once each month), and to

17

bring food to the office for occasional holiday celebrations. *See id.* ¶¶ 96–98. Because Alanis could not tolerate the smells from the food, she could not participate in the staff meetings or get-togethers. *Id.* In addition, says Alanis, two of her co-workers spoke to her about her sensitivity to smells (though Alanis does not explain what exactly those employees said); and after Thomas held a staff meeting in response to Alanis's complaints about odors, some of the workers gave Alanis "dirty looks." *Id.* ¶ 99. Alanis claims that a private office would have solved her problem with smells, but when one became available, it was given to another employee even though Alanis had requested it. *See id.* ¶¶ 84, 86, 132.

These actions are not objectively abusive in the sense prohibited by the hostile-environment doctrine. There is no suggestion that the co-workers' comments were insulting or intimidating, and there were no physical threats.[8] Moreover, even in the context of Alanis's sensitivity, eating in the workspace and wearing scented products do not create an objectively hostile environment. Alanis may have been personally offended that her supervisor did not require her co-workers to abandon their own, otherwise-reasonable routines to accommodate Alanis's sensitivities, but this is not enough to suggest that the consequences of Thomas's decision were so

---

[8] Absent certain defenses, employers are vicariously liable for supervisors' conduct. *See Silk*, 194 F.3d at 804 (quoting *Adusumilli*, 164 F.3d at 361). To hold the employer liable for a (non-supervisory) co-worker's actions, however, the plaintiff must show that the employer was negligent in discovering or remedying the harassment. *See id.*; *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 866 (7th Cir. 2013) (addressing a hostile-work-environment claim under Title VII). Specifically, the plaintiff must show that notice of the harassing conduct was given to someone with the authority to take corrective action, or to someone who reasonably could have been expected to refer the complaint to another superior with such authority. *Lambert*, 723 F.3d at 866–67 (quoting *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1037 (7th Cir. 1998)). For present purposes, I assume that Alanis's supervisor had the requisite notice.

severe or pervasive as to be objectively abusive. Nor does Thomas's other conduct fill the gap. That Thomas on some (unknown number of) occasions applied perfume in Alanis's presence, and once wore heavy perfume (and threatened to discipline Alanis) after Alanis complained about the scents in the office, does suggest some hostility toward Alanis because of her medical condition. But these events were not serious enough, or, as far as may be gleaned from the complaint, frequent enough, to render Alanis's work environment an abusive one. Even when taken together with the co-workers' behavior, Thomas's occasional use of perfume and single threat of discipline do not plausibly suggest the kind of intimidating or derisive atmosphere indicative of a hostile workplace.[9]

Assuming that a hostile-work-environment claim is actionable under the ADA—and the statute's similarity to Title VII suggests that it is—Alanis has not alleged enough to state such a claim here. Metra's motion to dismiss Count XI of the amended complaint is granted.

---

[9] At this stage, it would ordinarily be premature to draw a conclusion about the abusiveness of the work environment. *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). But here, even assuming Alanis's allegations are true, there is nothing objectively severe about them.

## IV. Conclusion

For the reasons discussed above, defendants' motions to dismiss, [31], is granted in part and denied in part. Count I of the current complaint is barred by *res judicata* and is dismissed with prejudice. Count XI fails to state a proper claim for hostile work environment under the ADA (assuming that such a claim is actionable), and is also dismissed. Because Alanis may be able to cure some of this claim's deficiencies through re-pleading, however, it is dismissed without prejudice. The motion is otherwise denied.

ENTER:

_____

Manish S. Shah
United States District Judge

Date: 2/8/16