UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ELDA ALANIS,

        Plaintiff,

  v.

METRA,

        Defendant.

No. 13 CV 5962

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Elda Alanis brings this action against her employer, defendant Metra, for discriminating and retaliating against her on the basis of her disability, Hispanic ancestry, and color; and for failing to reasonably accommodate her disabilities. Metra moves for summary judgment. For the following reasons, the motion for summary judgment is granted.

### I.    Background

Metra filed this motion for summary judgment on August 3, 2016. *See* [54].[1] Alanis's response was due on October 24, 2016. *See* [60]. On the day her response was due, Alanis filed a motion for extension of time to respond to the motion for summary judgment, which I granted. *See* [61], [62]. Alanis's new deadline to respond was December 23, 2016. *See* [62]. To this day, Alanis has not filed a response to Metra's motion for summary judgment or to Metra's Local Rule 56.1 statement of facts. As a result, I will rely on Metra's statement of the facts to the

---

[1] Bracketed numbers refer to entries on the district court's docket.

extent that it is supported by evidence in the record. N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); s*ee also Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

1. *The Complaint*

Alanis bases her claims under the ADA, Title VII, and § 1981 on the same set supporting of facts, which she outlines in the complaint. Her version of the facts, however, is largely unsupported by the record.

After filing a charge with the EEOC in November 2011, in which she alleged violations of her civil rights pursuant to the ADA, Alanis says Metra forced her to go on medical leave. [29] ¶¶ 39, 56–57. "Metra refused to permit Alanis to return, ostensibly because a psychological evaluation was required." [29] ¶ 40. On January 6 and 8, 2012, Alanis says she gave Metra two notes from her doctors, clearing her to return to work and providing a list of her requested accommodations. [29] ¶¶ 49–50. She says that Metra did not engage with her to determine reasonable accommodations until the end of February of 2012 and that it did not provide any accommodations for her until April 20, 2012. [29] ¶ 51. As a result of the delay, Alanis says she was on a forced leave of absence for five months. [29] ¶ 52. She notes that other employees who did not have her protected characteristics,[2] were

---

[2] Alanis is a qualified individual under the ADA. [29] ¶ 38. Alanis is also a person of Hispanic ancestry and a person of color. [29] ¶¶ 64, 74. She says she is the only person in her department that is of Hispanic ancestry. [29] ¶ 66.

2

not prevented from returning to work in a timely fashion nor were they forced to undergo psychological evaluations as she was. [29] ¶¶ 44, 57, 61, 69, 79.

When she returned to work, Alanis says Metra demoted her because of her documented physical disabilities or perceived mental disabilities. [29] ¶¶ 39, 60, 65, 68, 78. Meanwhile, she says two other similarly situated employees who did not have her protected characteristics were promoted. [29] ¶¶ 43, 60, 68, 78. Later, Alanis learned that Metra withdrew its job posting for a Project Manager position "because she had applied for it." [29] ¶ 105. She also says that other similarly situated employees who did not have her protected characteristics were paid more than she was and were not prevented from attending outreach events as she was. [29] ¶¶ 70–71, 80–81, 118, 122–23, 128, 136–37.

Despite Alanis's fragrance-free accommodation request, she says that Metra's Senior Director of the Office of Business Diversity and Civil Rights (formerly DBE), Janice Thomas, continued to wear perfume in the workplace, that Thomas allowed other employees to wear fragrances and to use the conference room near Alanis's cubicle as a lunchroom, and that Thomas failed to create guidelines for ordering food during staff meetings or gatherings. [29] ¶¶ 90–99, 111–12. She says that non-Hispanic coworkers and supervisors have made comments to her indicating that they knew she is the individual with the disability regarding odors. [29] ¶ 143. In turn, they use their knowledge of her disability to harass her "on account of her race, color, and national origin." *Id.* They harass her by continually eating their lunches in a conference room in close proximity to her workspace, instructing her to

3

leave if she cannot tolerate the food odors at the all-staff meetings, using scented cleaning products and personal perfumes, and putting Alanis's workstation in a high foot traffic area. *Id.*

2. *The Record*

Metra hired Alanis almost ten years ago as a college graduate DBE Associate. [56] ¶ 2. In the fall of 2011, Thomas reviewed existing job descriptions in the DBE area and concluded they did not match the employees' actual job functions. [56] ¶ 54. As a result, Thomas drafted new job descriptions for employees in the DBE area, including Alanis. *Id.* Thomas discussed her findings with Alanis and two other DBE employees, Steve Oganovich and Brittany Waters, and explained that she would recommend to a compensation consultant that their job titles be changed.[3] [56] ¶ 55. Thomas did, in fact, recommend to the consultant that Alanis's job title be reclassified. [56] ¶ 56. As the study was underway when Thomas made the recommendation, the proposed changes did not go into effect immediately. [56] ¶ 59–61.

On November 2, 2011, while at work, Alanis experienced difficulty breathing and various other symptoms. [56] ¶ 24. Metra sent Alanis to its contracted medical provider, where a doctor examined her. [56] ¶¶ 24–25. The doctor noted that she behaved inconsistently during the examination. [56] ¶ 25. He concluded that she could return to work, but he informed Alanis that she must obtain a psychological

---

[3] Alanis testified that her understanding of what was discussed during this meeting was that she was "going to be promoted." [58] at 21, 81:15–18.

4

clearance examination by December 2, 2011, or else she would be prohibited from working at Metra.[4] *Id.*

Approximately one week later, Alanis was at work again when she began to experience similar symptoms. [56] ¶ 26. For the next several days, Alanis came to work, but claimed she could not speak and she would only communicate via text message or pen and paper. [56] ¶¶ 27–29. On November 17, 2011, the doctor examined Alanis again. [56] ¶ 29. He reported that Alanis used pen and paper to communicate with him, but that when Alanis had to communicate with the receptionist, she whispered. *Id.* After examining her, the doctor concluded that Alanis's "inability" to speak prevented her from performing her job duties and thus she was "medically disqualified" from working. [56] ¶ 30. A few days later, Alanis submitted a request for FMLA continuous leave, which she backdated to begin on November 18, 2011; she also submitted an application for short term disability benefits. [56] ¶ 31.

Alanis's Annual Performance Appraisal for 2011 reported an overall score of "Needs Improvement." [58-1] at 33. This resulted in Metra placing Alanis on a "90 Day Performance Improvement Plan." [58-1] at 37. Thomas sent Alanis a memorandum explaining that if she "fail[ed] to make the required improvements in the areas identified, [she would] be disciplined or terminated." *Id.* Her performance eventually improved; in 2012, Alanis's annual review reflected that her performance "Meets Expectations." [58-1] at 53.

---

[4] Previous documentation from Alanis's treating doctors recommended that she seek psychological therapy or evaluation. [56] ¶ 23.

In early January 2012, Alanis submitted notes from her treating doctors releasing her to return to work and requesting accommodations. [56] ¶ 33. Since Alanis had failed to obtain psychological clearance, though, Metra did not permit her to return to work.[5] *Id.* At that time, Alanis's yearly salary was $41,623. [56] ¶ 65. Another Metra employee with the same title, Brittany Waters, earned the same yearly salary as Alanis. *Id.* Steve Oganovich, who also held the same title as Alanis, but who had worked at Metra for fourteen years longer than Alanis, earned a higher yearly salary than Alanis ($49,644). [56] ¶¶ 65–66. At the end of January, Metra posted a job posting for a DBE Compliance Specialist position. [56] ¶ 57. Oganovich applied to the posting and was awarded the position. [56] ¶ 59. His old position was reclassified as DBE Compliance Specialist and it, too, was posted as a job opportunity. [56] ¶ 59. Waters applied to that posting and she was awarded the position. *Id.* Alanis did not apply to the DBE Compliance Specialist posting because she believed (due to her conversation with Thomas in the fall) that she had already been promoted to that position. [56] ¶ 58. Based on these job changes, Oganovich and Waters each earned a higher salary than Alanis in 2012.[6] [56] ¶ 67.

---

[5] On December 2, 2011 (when the doctor's thirty day window for Alanis to undergo an examination had expired), Metra sent Alanis a letter reminding her that she had not yet obtained psychological clearance to return to work. [56] ¶ 32.

[6] Kelsey Somerville was hired as a DBE Compliance Specialist in May 2014 at a salary of $48,617; effective April 1, 2014, Alanis's salary was $55,563. [56] ¶ 75. Effective July 2, 2015, Somerville's salary was $50,440 and Alanis's salary was $57,091. *Id.* Loletha Johnson was hired in July 2013 as a Grade 6, DBE Compliance Specialist at a starting salary of $50,000; at that time, Alanis's salary was $51,006, and on April 1, 2014, both of their salaries increased to $55,563. [56] ¶ 76. Shavon Moore was hired in December 2013 at a starting salary of $55,563. [56] at 77.

Alanis returned to work on April 30, 2012, after she underwent a psychological clearance examination. [56] ¶¶ 34, 45. She submitted requests to Metra's Reasonable Accommodation Committee, which included: flexible work hours, modified dress code to allow loose fitting clothes, limitation on talking at length when symptomatic, periodic rest breaks, self-paced workload, a fragrance-free workplace policy, use of a headset phone to minimize ambient noise and distractions, and a private office. [56] ¶¶ 35–36, 46. Metra committed to providing her the following accommodations: modifying the dress code, not talking at length when symptomatic, allowing periodic rest breaks away from her workstation, allowing her to use a cell phone and full spectrum lamp, and providing assistance for heavy lifting. [56] ¶ 44. Metra did not offer Alanis a private office because the two private offices it had were used by employees who maintained confidential payroll records, a task with which Alanis was not involved. [56] ¶¶ 38–40.

Metra also agreed to take actions to reduce workplace odors, which included changing the cleaning solutions in the restroom on the floor where DBE staff worked, instructing DBE staff to use only the approved cleaning solutions, instructing DBE staff to refrain from wearing strong fragrances, and moving Alanis's workspace to a cubicle farther away from the refrigerator and microwave (one source of the odors she was complaining about). [56] ¶¶ 41, 46–47. When Alanis complained that DBE staff members were not complying with Metra's directions, Metra responded by inviting Alanis to report any odor issues contemporaneously so that they could be investigated. [56] ¶ 48. On the one occasion that Alanis did

7

contemporaneously report an odor issue, Thomas intervened and reminded that DBE staff member of the restriction on strong fragrances. [56] ¶ 49.

At the end of March 2013, Metra formally promoted Alanis to DBE Compliance Specialist and made her title change retroactive to January 2013. [56] ¶ 61. Her salary increased from $41,623 to $55,563 over the course of three incremental, but retroactive, raises.[7] [56] ¶ 71. Around the same time as her formal promotion, Alanis applied to a job posting for a Community Liaison position at Metra. [56] ¶ 62. The position required applicants to have a Bachelor's Degree in Business Administration, Marketing, or in a related discipline, or to have related experience. *Id.* Alanis had a Master's Degree in English and Writing, [58] at 37, 145:18–19, but Metra gave the position to Ashley Colquitt, who had a Master's Degree in Public Relations and Advertising. [56] ¶ 63. At the end of that year, Alanis also applied to a job posting for a Project Manager position. [58] at 38, 151:22–152:5. She was scheduled to interview with Thomas for the position, but that interview was rescheduled twice and she never had the opportunity to sit for it; Metra withdrew the job posting. [58] at 39, 156:1–158:24. Alanis testified that she heard from another employee that Thomas said Metra withdrew the position because Alanis had applied for it. [58] at 40, 159:20–24.

Once Thomas became the Senior Director of the Office of Business Diversity and Civil Rights, she thought it was important for her to attend Diversity Action

---

[7] Metra had difficulty implementing all of the compensation study's recommended pay increases simultaneously; thus, the pay increase Alanis received on March 29, 2013, was the maximum allowed at that time. [56] ¶¶ 69–71.

8

Committee meetings and other outreach events herself. [58-5] ¶¶ 1–2. She stopped sending other Metra employees to such events, which in turn meant Alanis was no longer able to attend outreach events like she used to. [58] at 33, 130:13–131:3.

II. **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute over a material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although Alanis failed to respond to the summary judgment motion and she did not comply with Local Rule 56.1, Metra does not automatically prevail on its motion for summary judgment. *Raymond*, 442 F.3d at 608. The burden of persuasion remains on Metra to show that it is entitled to judgment as a matter of law. *Id.* The facts are construed in the light most favorable to Alanis and all reasonable inferences are drawn in her favor. *Bell v. Taylor*, 827 F.3d 699, 704 (7th Cir. 2016) (citation omitted).

III. **Analysis**

   A. **Discrimination and Retaliation Claims**

The Americans with Disabilities Act prohibits employers from discriminating or retaliating against disabled employees because of their disability. 42 U.S.C. §§ 12112(a), 12203(a). To establish a violation of the ADA, the employee must prove: (1) she is disabled; (2) she is qualified to perform her essential functions with or without reasonable accommodation; and (3) the employer took an adverse job action

9

against her because of her disability. *Winsley v. Cook Cty.*, 563 F.3d 598, 603 (7th Cir. 2009).

As for discrimination and retaliation claims under Title VII and § 1981, the substantive standards and methods of proof are the same. *Lane v. Riverview Hosp.*, 835 F.3d 691, 695 (7th Cir. 2016). To survive summary judgment under Title VII or § 1981, Alanis must present evidence that would allow a reasonable juror to conclude that she was discriminated or retaliated against due to her protected characteristic and that she suffered an adverse employment action as a result. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Evidence of such discrimination or retaliation must be considered as a whole and not separated into "direct" and "indirect" subcategories. *Id.*

Despite Alanis's allegations, the record reflects that Metra did not take any adverse actions against her, nor did it harbor a discriminatory or retaliatory intent; therefore, Metra cannot be held liable for discrimination or retaliation under the ADA, Title VII, or § 1981. An adverse job action is "more than a mere inconvenience" and more than an alteration of responsibilities. *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007). It must be significant, such as a termination or a change to the employee's compensation, financial terms, career prospects, or to the workplace environment in a way that is degrading or unsafe. *Maclin v. SBC Ameritech*, 520 F.3d 781, 787–88 (7th Cir. 2008). "The showing a plaintiff must make to set out an adverse employment action required for a retaliation claim is lower than that required for a discrimination claim; a plaintiff

must only show that the employer's action would cause a 'reasonable worker' to be dissuaded from making or supporting a charge of discrimination." *Chaib v. Indiana*, 744 F.3d 974, 986–87 (7th Cir. 2014) *overruled on other grounds by Ortiz*, 834 F.3d 760.

The five month period during which Metra forbade Alanis from returning to work was not an adverse action.[8] A doctor had concluded that Alanis was medically disqualified from performing her job duties, which justified Metra's decision to require Alanis to undergo a psychological clearance examination before allowing her to return to work.[9] Metra gave Alanis a thirty-day window to complete the task, but she refused to sit for the examination for five months. Alanis could have avoided missing work altogether had she timely complied with Metra's requirement. The only reason the examination affected the conditions of Alanis's employment was because of Alanis's own actions and not because of any action by Metra.

When Alanis returned to work, she assumed the same job title she had in November 2011. The discussion Thomas had with Alanis in fall 2011 about Thomas's intention to recommend that Alanis's job title be reclassified is not the same as Thomas actually promoting Alanis. The record shows that Metra formally promoted Alanis in March 2013, retroactive to January 2013. There is nothing in the record about any earlier promotions. Since Alanis was not promoted until 2013,

---

[8] The ADA and its implementing regulations allow employers to require its employees to undergo a medical examination if the examination is job-related and consistent with business necessity. 42 U.S.C. 12112(d)(4); 29 C.F.R. 1630.14(c).

[9] Alanis has not pointed to any evidence of Metra treating a similarly situated employee differently under such circumstances.

Metra could not have demoted her in 2012. Thus, Alanis's claim that she was demoted is not borne out by any evidence.

To the extent Alanis was paid less than other DBE associates at any given time, Alanis has not carried her burden of showing that the employees she compares herself to are similarly situated to her. Without such information, a court (and a jury) cannot know if those employees are proper comparators nor can a factfinder conclude that the salary differences were based on Metra's discriminatory or retaliatory intent. *Coleman v. Donahoe*, 667 F.3d 835, 847 (7th Cir. 2012) ("There must be 'enough common factors [...] to allow for a meaningful comparison in order to divine whether intentional discrimination was at play.'") (citation omitted). Moreover, Metra has articulated a legitimate non-discriminatory business reason for the difference. Due to the compensation study, Metra could only afford to increase employees' pay to the recommended amounts on an incremental basis. The staggered raises resulted in some employees being paid more than their counterparts for limited periods of time. Alanis does not have evidence to support a finding that Metra's proffered reasons were merely a pretext for its discriminatory intent vis-a-vis Alanis's disability, Hispanic origin, or color; consequently, any disparity in the salary Metra paid her would not support a claim for discrimination or retaliation.

Metra did not act adversely to Alanis when it hired Colquitt for the Community Liaison position over Alanis, because Colquitt's qualifications were better suited for the job than were Alanis's. Relatedly, there is no evidence in the

undisputed record to support the assertion that Metra withdrew the Project Manager posting *because* Alanis applied to it. As such, these decisions are not significant enough to rise to the level of an adverse action here. They are more akin to a mere inconvenience, which is not actionable. They would not have dissuaded a reasonable employee from filing relevant charges.

Not allowing an employee to participate in work-related events that are necessary to the employee's career advancement would likely constitute an adverse action. Although Alanis blames her inability to participate in outreach events as the reason for her poor performance review and disciplinary actions, the record does not support her theory. Metra began sending Thomas and not Alanis to such events in 2010 and yet, Alanis's annual performance review improved from "Needs Improvement" in 2011 to "Meets Expectations" in 2012.[10] The record shows that Alanis's performance was not tied to the outreach events. Without more, Metra's decision to send Thomas and not Alanis to these events was not an adverse action it took against Alanis.

Although Alanis's co-workers sometimes wore fragrances and ate food in the conference room near her cubicle, which made her symptomatic at times, there is no evidence that they did so because they wished to harass Alanis on the basis of her race or color, or in retaliation for protected activity on her part. Alanis harbors a subjective belief about her co-workers' motives, but she offers no admissible evidence to support the necessary inference. A causal connection between the staff's

---

[10] Poor performance reviews cannot be the basis of an adverse employment action. *Chaib*, 744 F.3d at 984.

actions and Alanis's race, color, or protected activity is missing here. These actions do not support a claim for discrimination or retaliation.

Once Metra learned that the changes it made to accommodate Alanis did not eliminate her symptoms, Metra invited Alanis to notify it of any odor issues contemporaneously so that the source could be investigated. When Alanis did report an issue, Thomas intervened on Alanis's behalf and reminded the relevant staff member of the fragrance-free workplace requirement. The record shows that Metra made reasonable efforts to provide (and police where necessary) the accommodations it agreed to provide Alanis. That Metra could not guarantee a fragrance-free environment for Alanis does not constitute an adverse action.

In sum, a jury could not conclude from the undisputed record that Metra took a significant employment action against Alanis to discriminate against her; nor could a jury find that a reasonable worker in Alanis's position would be dissuaded by Metra's actions from making a charge of discrimination. Even if she could point to some adverse action, there is no evidence in the record that Metra treated Alanis any differently than similarly situated employees *because of* her protected characteristics. The totality of the circumstances, therefore, does not provide a sufficient basis for Alanis's discrimination or retaliation claims under the ADA, Title VII, or § 1981. Metra is entitled to summary judgment on counts II, IV–X, and XII.

B.  **Reasonable Accommodations**

The ADA only requires an employer to make "reasonable accommodations" to a disabled employee's limitations. *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789,

802 (7th Cir. 2005). Employers are not required to provide the particular accommodation that an employee requests. *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). Instead, the employer may choose what accommodation to provide, so long as it effectively accommodates the employee's limitations. *E.E.O.C.*, 417 F.3d at 802.

Metra could not have run afoul of these requirements in January or February 2012 because during that time, Alanis was medically disqualified from working at Metra. After Alanis completed a psychological clearance examination and returned to work in April 2012, Metra then considered her requests for accommodations and notified her of what accommodations it would and would not make. Metra accommodated her by allowing her to modify the dress code, take rest breaks away from her workstation, and to use a full spectrum lamp. The one accommodation Metra denied and with which Alanis takes issue is her request for a private office. But Metra's two private offices were occupied by employees who maintained confidential files. Since Alanis did not work with confidential files, it was not feasible for Metra to remove one of the private office's residents and install Alanis in that office. The record shows Metra went to great lengths to reasonably accommodate Alanis. "[W]here, as here, the employer does not obstruct the process, but instead makes reasonable efforts both to communicate with the employee and provide accommodations based on the information it possessed, ADA liability simply does not follow." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996). As such, Metra is entitled to summary judgment on Count III.

C.  **Hostile Work Environment**

In order to prevail on a hostile work environment claim under Title VII and § 1981, Alanis must show that harassment at Metra was both objectively and subjectively so severe or pervasive that it altered the conditions of employment. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011). She must also produce evidence that the harassment was based on her protected characteristic and that there is a basis for employer liability. *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013) ("Title VII is not a general prophylactic against workplace animus.").

A work environment is objectively hostile when a reasonable person would find it hostile or abusive. *Smith v. Ne. Illinois Univ.*, 388 F.3d 559, 566 (7th Cir. 2004). The work environment at Metra was not objectively offensive. A reasonable person in Alanis's position would appreciate the various changes Metra made to reduce the existence of odors in the workplace and would acknowledge the number of ways her co-workers had adapted their own routines to avoid causing her discomfort. It would not be reasonable to conclude that Alanis's co-workers sought to aggravate her symptoms in order to harass her on the basis of her race or color. There is no evidence of a causal connection between the staff's activities and Alanis's race or color.

An employer can only be liable for a hostile work environment if the employee can show: (1) a supervisor participated in the harassment; or (2) the employer was negligent in discovering or remedying the harassment. If an employer takes reasonable steps to learn of and to rectify harassment by its employees, it

discharges its legal duty. *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001). The employer's response must be "reasonably calculated to prevent further harassment under the particular facts and circumstances of the case at the time the allegations are made." *Id.* (citation omitted). The only supervisor Alanis mentions in her complaint is Thomas. Thomas did not participate in the alleged harassment; she intervened on Alanis's behalf to enforce the fragrance-free workplace requirement. Given Alanis's extreme sensitivity to an ever-changing number of scents, it was virtually impossible for Metra to provide a fragrance-free workplace for her; nevertheless, the steps Metra took to alleviate her discomfort were reasonable. *See Milligan v. Bd. of Trustees of S. Illinois Univ.*, 686 F.3d 378, 384 (7th Cir. 2012) (collecting cases). Metra is entitled to summary judgment as to Count XIII.

## IV. Conclusion

Metra's motion for summary judgment, [54], is granted. Enter judgment and terminate the civil case.

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

2/13/2017

17